# McKNIGHT *v.* POHLE.

---

PATENTS; INTERFERENCE; PRIORITY OF INVENTION; BURDEN OF PROOF.

1. The burden of showing priority of invention in an interference proceeding is on the junior applicant; and this burden is added to when there have been three successive adverse decisions against him in the Patent Office.

2. By reason of the state of the art of treating refractory ores, an invention of a process consisting of roasting or fusing a mixture of the ore, sulfur, and a haloid of an alkaline or alkaline earth metal with a free access of air and agitation at a temperature sufficient to effect the desired reaction, is a narrow one, and proof of successful invention by a

junior applicant in an interference proceeding must embrace all the elements of the specific process as recited in the issue.

3. Where the junior applicant in an interference proceeding, after his alleged invention of the specific process in controversy, and after a discussion with the senior parties, whose application for patent had been allowed, of the question of joining interests, in which discussion he did not disclose the specific process or claim it when they disclosed it, filed an application claiming it, and amended a previous application by putting in specific claims in place of previous ones which had not disclosed the specific process of the issue, and where his own testimony was vague and unsatisfactory regarding his early experiments, and his corroborating evidence was weak because it came from unskilled persons, testifying from memory long after the occurrences concerning which they testify, it was *held* that priority of invention was properly awarded to the senior parties.

No. 228. Patent Appeals. Submitted May 14, 1903. Decided June 3, 1903.

HEARING on an appeal from the decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Joshua Pusey* and *Mr. Edmund Wetmore* for the appellant.

*Mr. Augustus B. Stoughton* and *Messrs. Johnson & Johnson* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an interference proceeding between opposing claimants of the invention of a new process for treating refractory ores, which is defined in the following issue as declared:

1. "The process which consists in effecting a mixture containing the ore, sulfur, and a haloid of an alkaline or alkaline-earth metal, the relative proportions of the materials being substantially those quantitatively requisite to produce, when heated in the presence of oxygen, a haloid of the metal or metals to be extracted from the ore and a sulfate of the alkaline or alkaline-

earth metal; roasting the mixture with free access of air, and agitation, at a temperature sufficient to effect the reaction mentioned; and volatilizing and recovering the metal values as haloids or oxyhaloids."

2. "The process which consists in preparing a charge containing the ore, sulfur, and a chlorid of an alkaline or alkaline-earth metal, the relative proportions of the materials being substantially those quantitatively requisite to produce, when heated in the presence of oxygen, a chlorid of the metal or metals to be extracted from the ore, and a sulfate of the alkaline or alkaline-earth metals; roasting the charge with free access of air and with agitation, at a temperature sufficient to effect the reaction mentioned; and volatilizing and recovering the metal values as chlorids or oxychlorids."

The application of the appellees, Edwin C. Pohle and Stuart Croasdale, was filed January 23, 1900, and that of the appellant, Robert McKnight, on December 3, 1900. On the latter, therefore, was cast the burden of establishing priority, upon which has been superimposed that raised by the successive, adverse decisions of the three tribunals of the Patent Office. The question raised is one of fact only, and after a fair review and careful consideration of the evidence offered on behalf of McKnight, those tribunals have concurred in the view that it lacks the necessary weight to carry his claim of invention back of the earlier filing date of his opponents.

Concurring in that view, and approving generally the grounds upon which it has been maintained in the decisions approved, we regard it as unnecessary to do more than briefly state the grounds of our concurrence.

By reason of the state of the art, the invention, as finally declared patentable, is a narrow one; and proof of successful invention must embrace all the elements of the specific process as recited in the issue.

McKnight had the general idea of volatilizing, and thereby recovering the metal values of refractory sulfid ores through fusing or roasting them in combination with common salt. What was necessary for him to prove then, was the conception of the

further necessary steps, namely, roasting the mixture with free access of air, and agitation at a temperature sufficient to effect the desired reaction.

McKnight, himself, testified, and introduced evidence of others in an attempt to show that he had conceived every step of the process and had actually reduced it to practice in Colorado in 1896 and 1897, and in New Jersey in 1899. McKnight's own testimony in regard to his early experiments is vague and unsatisfactory, especially when contrasted with the carefully-recorded statements of his opponents showing the orderly steps of their progress from conception to complete invention through experimentation. The corroborating evidence introduced is weak because it comes from witnesses insufficiently skilled, if skilled at all in the particulars involved, who testified from memory only, long after the occurrences of which they spoke—some of them from five to six years after.

Nothing more is shown with reasonable certainty than that McKnight had a volatilizing process carried on by fusing the mixture in a closed receptacle, without the free access of air and the agitation made necessary by the issue. Moreover, the weight of all this evidence is seriously impaired by the fact that on January 12, 1900, McKnight filed an application for a patent for a volatilizing process with generic claims. Of this application, it was correctly said by the Commissioner:

"As originally filed, the specification disclosed, and the drawing illustrated, a closed cylinder in which the material is to be placed for the purpose of heating the same. There is no mention whatever of heating in the presence of air, or of the agitation of the mixture during the heating."

As late as November, 1900, McKnight, with his then attorney, Collet, called upon one Gibbs, who was interested in the rival application, and had a talk concerning the possibility of joining interests. Neither party then had any information of the specific process of the other. Collet stated that McKnight's application had been allowed, and gave Gibbs a copy of the claim allowed as follows:

"Claim 1. The art of reducing gold from refractory ores

which consists in treating the pulverized ore and a haloid salt in a substantially closed receptacle until a halogen compound of gold is produced. We volatilize and then draw off and collect the halogen compound of gold."

Within a day or two, McKnight and Collet came to Gibbs's office in Philadelphia, and there discussed the matter with him, Croasdale, and Hawkins—the latter having an interest also. The Pohle and Croasdale application had been previously allowed for patent. McKnight's had not been.

Supposing that both applications had been allowed, and assuming consequently that there could be no interference between their claims, the Pohle and Croasdale specification and allowed claims were shown to Collet, who made notes, and admits that he memorized the claims.

The evidence relating to the discussion of the processes during this meeting shows, we think, that McKnight did not then claim that his process included the free access of air to the interior of the fusing-cylinder. Collet could only explain his statements respecting the closed cylinder and experiments therewith, by saying that what he said,—"while not literally a misstatement, was so in spirit because it was intended to deceive."

It was not until after this interview and the acquisition of definite knowledge of the process of the other parties, that McKnight amended his pending application, the allowance of which had been untruly claimed, putting in specific claims for the free access of air, etc. Before that, however, he filed the present application, December 3, 1900, as stated by counsel in the brief on his behalf,—"for the purpose of securing an immediate declaration of interference with Pohle and Croasdale's application."

Counsel admit in their brief that the failure of McKnight to refer to the use of air, or agitation of the mixture in his first application "raises a certain presumption that he had not then used the same;" but contend, at the same time, that it has been "fairly overcome by the testimony in behalf of McKnight." We cannot accede to this view of that testimony.

On the contrary, we agree wtih the Commissioner whose conclusion is summed up as follows:

"In view of these circumstances, the testimony presented on behalf of McKnight as to his invention before January, 1900, is to be carefully scrutinized. It is significant, to say the least, that he did not disclose the invention in his application of January, 1900, if he was then in possession of the same. This omission, coupled with the fact that he failed to disclose the same until it was admittedly disclosed to him by agents of another inventor, is almost sufficient of itself to warrant the conclusion that McKnight never independently invented the invention of the issue."

We regard it as unnecessary to consider the evidence of McKnight's operations with the apparatus removed by him to Philadelphia, as it all had relations to conditions prevailing long after the date when he acquired the knowledge of the Pohle and Croasdale process.

The last contention of counsel, submitted in the addendum to their brief, is that the decisions in the Patent Office are due to error in—"treating the invention as if it consisted in the 'exact determination' of the proportions, temperature, and amount of oxygen necessary to produce the required result, when no specific proportions, degrees of heat, or amount of air are mentioned in the statement of the issues."

What was said in those decisions in regard to these matters had reference, we think, to the facts disclosed in the specifications of the parties and the evidence showing the series of experiments that had been carried on by Pohle and Croasdale in order to demonstrate the efficiency and commercial value of the process. The substantial grounds of decision are those that have been before stated.

There is no error in the decision of the Commissioner, and his award of priority to the appellees must be affirmed. It is so ordered; and the clerk will certify this decision to the Commissioner as the law provides.	*Affirmed.*